IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GLORIA S. ORTA,                          §
                                         §
          Plaintiff,                     §
                                         §
v.                                       §          CIVIL ACTION NO. H-05-2719
                                         §
JO ANNE B. BARNHART,                     §
COMMISSIONER OF THE SOCIAL               §
SECURITY ADMINISTRATION,                 §
                                         §
          Defendant.                     §


<u>**MEMORANDUM OPINION**</u>

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 14) and Defendant's Cross Motion for Summary Judgment (Docket Entry No. 15).  The court has considered the motions, all relevant filings, the administrative record, and the applicable law.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross Motion for Summary Judgment is **GRANTED**.

## I. Case Background

### A. Procedural History

In this action, Gloria Orta ("Plaintiff") seeks review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgement, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 13.

and disability insurance payments under Title II and Title XVI of the Social Security Act ("the Act"). Plaintiff filed her application on September 18, 2002.[2]   In the application, Plaintiff claimed an inability to work since November 28, 2001, due to "eyesight [and] weight."[3]

After Plaintiff's application was denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[4]   The ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas, on December 16, 2004.[5]   After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on January 26, 2005.[6]   The ALJ found Plaintiff was not disabled at any time during the period covered by her application, and Plaintiff appealed that decision on March 23, 2005.[7]

On July 15, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner.[8]   Plaintiff then

---

[2]     Transcript of the Administrative Proceedings ("Tr.") 46.

[3]     Tr. 46.  Plaintiff later amended her application to allege an onset date of October 1, 2002.  Tr. 559.

[4]     Tr. 21, 30, 37.

[5]     Tr. 39, 540.

[6]     Tr. 11.

[7]     Tr. 10, 17.

[8]     Tr. 6-8.

filed this timely civil action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c) for judicial review of the Commissioner's unfavorable decision.

**B. Factual History**

### 1. Plaintiff's Age, Education, and Work Experience

Plaintiff was born on December 26, 1947, and was fifty-four years old on the date of the alleged onset of disability.[9] Plaintiff possessed a high school education, and past relevant work experience as a customer service representative and branch manager.[10]

### 2. Plaintiff's Testimony

In her initial Application for Disability Insurance Benefits ("the Application"), Plaintiff stated that she was limited in her ability to work because of her "eyesight [and] weight."[11]   She reported that these conditions first bothered her beginning January 15, 2001, and she became unable to work because of these conditions on November 28, 2001.[12]   Plaintiff also stated on the Application that she worked after the date her conditions first bothered her.[13] When asked why she stopped working on November 28, 2001, Plaintiff answered only "my position was closed in Houston," and did not

---

[9]     Tr. 46.

[10]    Tr. 17, 58, 66.

[11]    Tr. 52.

[12]    Tr. 52.

[13]    Tr. 52.

mention her alleged disabilities.[14]  Plaintiff also provided a work history in the form of her resume with a handwritten note stating "last day was 11-28-01[.]  Laid-off, business closed Houston office and finally the whole business."[15]

After her claim was denied at the initial level, Plaintiff filed a Request for Reconsideration stating her "primary disability is loss of eyesight due to [d]iabetic [r]etinopathy."[16]  She reported that her eyesight deteriorated to the point where she was no longer able to complete housework, operate a motor vehicle, or shop alone for groceries.[17]  She also stated that she was "gradually noticing more of a challenge with personal hygiene."[18]

When her claim was denied again, Plaintiff appointed an attorney representative and filed a Request For Hearing By Administrative Law Judge, stating that she had "[d]iabetes, [a]nxiety, [d]epression, [g]laucoma, [c]ataracts, numbness in legs [and] hands, [was] tired all the time, [and had] concentration problems."[19]  Although on October 8, 2002, Plaintiff stated that she had no mental or emotional problems that limited what she was able

---

[14]    Tr. 52.

[15]    Tr. 490.

[16]    Tr. 28.  Diabetic retinopathy is a "disease of the retina caused by diabetes. It is marked by the presence of tiny areas of hemorrhage due to the dilatation of the capillaries."  2-D Attorneys' Dictionary of Medicine 2251.

[17]    Tr. 90.

[18]    Tr. 90.

[19]    Tr. 37.  Prior to appointing an attorney Plaintiff was represented by her niece.  See, e.g., Tr. 85.

to do, she then reported on an undated form (presumably filed sometime after requesting the hearing) that she suffered additionally from skin lesions, depression, and anxiety.[20]  Also on that same undated form, Plaintiff both stated that she received treatment for her conditions in the form of "over 10 different medications," and indicated that she was not then taking any prescription or nonprescription drugs or medications.[21]

In the hearing, Plaintiff testified that she was five-feet, six-inches tall and weighed approximately 329 pounds.[22]  She stated that she had gained "a lot" of weight and thought that the weight gain was due to her medications.[23]  She claimed that she experienced pain and swelling in her legs, ankles, and knees, and thought that pain was getting worse.[24]  She briefly testified that she had open sores on her skin, and that her medication was not affecting an improvement in that condition.[25]  Plaintiff also testified that she did not drive, could not see words on a newspaper, and had trouble seeing a computer.[26]

**3. Plaintiff's Medical Record**

---

[20]   Tr. 95.

[21]   Tr. 96.

[22]   Tr. 541.

[23]   Tr. 542.

[24]   Tr. 544.

[25]   Tr. 545.

[26]   Tr. 544, 546, 547.

Plaintiff's medical record generally supports the testimony regarding her physical impairments.  Her record reflects a history of diabetes-related difficulties, including trouble with her weight, skin, and vision.  Doctors' notes regularly record evidence of her weight being in excess of 250 pounds and refer to her general appearance as being "obese" or "overweight."[27]  The record indicates Plaintiff had a skin disorder beginning at least as early as February 1997, and references skin problems (lesions, rashes, irritations, etc.) through the most current examinations available.[28]  Notably, though, there are also references to the skin rashes being "improved," and comments that Plaintiff did not complain of skin problems at several doctor visits.[29]

Lastly, there is extensive documentation in the record regarding Plaintiff's vision difficulties.  While her visual acuity in each eye fluctuated dramatically through the years, her left eye was fairly consistently diagnosed in the range of 20/100 to 20/400 (most often closer to 20/400), and her right eye in the range of 20/20 to 20/80 (most often 20/50 to 20/70).[30]  She underwent several surgeries and took several medications related to her eyesight.[31]

---

[27]     See, e.g., Tr. 118, 132, 133.

[28]     See, e.g., Tr. 295, 375.

[29]     See, e.g., Tr. 151, 186, 318.

[30]     See, e.g., Tr. 313-317, 319-323, 325-327, 329-335, 348, 350, 352, 395, 397, 399, 402, 407, 426, 428, 436, 447, 450, 451, 452-463, 474-477, 487.

[31]     See, e.g., Tr. 97-108, 321, 447.

6

### 4. The Vocational Expert's Testimony

After reviewing the file and listening to the testimony, the vocational expert ("VE"), Thomas King ("Mr. King"), opined that Plaintiff's prior work as a customer service representative was skilled work and had been performed at a light exertional work level.[32]  He also testified that her work as a customer service manager was skilled work at a sedentary exertional level.[33]

The ALJ asked the VE to assume that Plaintiff had use of only one eye with 20/50 visual acuity, and asked if that functional capacity would allow Plaintiff to perform her past relevant work at a sedentary level.[34]  The VE replied "Yes."[35]  When asked by the ALJ if Plaintiff's past relevant work could be performed with 20/70 visual acuity, the VE similarly opined that it could; however, the VE testified that at 20/80, "there may be some . . . shipping orders and things [with which] she may have some difficulty."[36]  Mr. King testified that visual acuity was an integral part of Plaintiff's transferable skills, and at 20/100, those skills would not transfer to other jobs.[37]  Lastly, the VE stated that in most

---

[32]     Tr. 554.  The VE added, though, that work as a customer service representative would typically be performed at a sedentary work level in the national economy.  Id.

[33]     Tr. 555.

[34]     Tr. 556.

[35]     Tr. 556.

[36]     Tr. 556.

[37]     Tr. 557.

of Plaintiff's past work she would able to elevate her legs and feet.[38]  Following questioning by the ALJ, Mr. King was examined by Plaintiff's attorney, who asked the VE to clarify his classification of Plaintiff's past work.[39]

## II. Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner to deny disability benefits is limited to two issues: 1) whether proper legal standards were used to evaluate the evidence; and 2) whether substantial record evidence supports the decision.  Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

The widely accepted definition of "substantial evidence" is "something more than a scintilla but less than a preponderance." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000); Brown, 192 F.3d at 496.  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  Brown, 192 F.3d at 496. The Commissioner is given the responsibility of deciding any conflicts in the evidence.  Id.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405 (g).  Only if no

---

[38]   Tr. 556.

[39]   Tr. 557-558.

8

credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.  <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).  In other words, the court is to defer to the decision of the Commissioner as much as is possible without making the court's review meaningless.   <u>Brown</u>, 192 F.3d at 496.

The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [20 C.F.R. Pt. 404, Subpt. P, App. 1] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

<u>Bowling v. Shalala</u>, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of proving he is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth. <u>Brown</u>, 192 F.3d at 498; <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994). The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. <u>Greenspan</u>, 38 F.3d at 236.

### III. Analysis

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful work since the amended alleged onset date of disability, and had three medically-determinable "severe" impairments: diabetic retinopathy, diabetes mellitus,[40] and obesity.[41] According to the ALJ, Plaintiff's impairments did not meet or equal the requirements of any Listing;[42] her testimony regarding subjective complaints and functional limitations were found to be "only partially credible;" and she maintained the Residual Functional Capacity ("RFC") "to perform sedentary work, restricted only by monocular vision with corrected vision in the

---

[40] Diabetes mellitus is a "disease in which the metabolism (body utilization) of sugars is greatly impaired due to the faulty secretion of insulin by the pancreas." 2-D Attorneys' Dictionary of Medicine 2228.

[41] Tr. 17.

[42] "The Listings" or "a Listing" refers to impairments listed in Appendix 1 of the Social Security Act regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

remaining eye ranging from 20/50 to 20/70."[43]   Based on these findings, the ALJ concluded that Plaintiff could perform her past relevant work, and therefore had not been under disability as defined by the Act at any time through the date of the decision.[44]

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.   Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that the ALJ did not follow proper legal procedures.

In her motion for summary judgment, Plaintiff sets forth three arguments specifying why the ALJ committed reversible error in the decision.   She contends that the ALJ (A) failed to provide sufficient analysis of Plaintiff's claims related to obesity, (B) failed to properly consider Plaintiff's claims related to prurigo nodularis[45] and erred by not calling a medical expert ("ME") to testify about that condition, and (C) failed to properly consider evidence related to Plaintiff's alleged visual ability.[46]

Defendant, on the other hand, contends that the ALJ employed proper legal standards in reviewing the evidence and that the ALJ's decision is supported by substantial evidence of record.   Defendant

---

[43]     Tr. 17.

[44]     Tr. 17.

[45]     Prurigo nodularis is a "chronic skin disease marked by itching and the appearance of wart-like nodules (lumps)."   3-H Attorneys' Dictionary of Medicine 4319.

[46]     Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14.

therefore maintains that the ALJ's decision should stand.[47]

## A. Obesity

Plaintiff first contends that the ALJ erred by "fail[ing] to provide any analysis of [Plaintiff's alleged obesity, and] in so doing, violated the instruction in Social Security Ruling (SSR) 02-01p."[48]

While the SSR is not binding on this court, it is binding on all components of the Social Security Administration ("SSA"), and therefore the ALJ is required to comply with it.  Sullivan v. Zebley, 493 U.S. 521, 531 (U.S. 1990); See Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).  The stated purpose of SSR 02-01p is "to provide guidance on SSA policy concerning the evaluation of obesity in disability claims filed under titles II and XVI of" the Act. 2002 SSR LEXIS 1 (SSR 2002).  It serves to "remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately," and states the SSA "will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  Id.  It further notes that "[t]here is no specific level of weight or [body mass index ("BMI")] that

---

[47]     Brief in Support of Defendant's Cross Motion for Summary Judgment, Docket Entry No. 15.

[48]     Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p. 4.

equates with a 'severe' or a 'not severe' impairment." Id. Most relevant to Plaintiff's argument is the commitment that "[a]s with any other impairment, [the SSA] will explain how [the SSA] reached [the] conclusions on whether obesity caused any physical or mental limitations." Id.

Plaintiff's medical records repeatedly referenced her weight and, at times, used the terms "obese" and "overweight" when describing her general appearance.[49] The ALJ recognized Plaintiff's obesity as a "severe" impairment, but did not otherwise reference it in the decision.[50] He did not explain how he reached the conclusion that obesity did not cause any physical or mental limitations on Plaintiff.[51]

In accordance with the Fifth Circuit's "strong preference for requiring the [SSA] to follow its own internal procedures," this court finds that the ALJ's failure to comply with SSR 02-01p's requirement to explain conclusions made concerning obesity-related limitations constitutes a legal error. Shave v. Apfel, 238 F.3d 592, 596 (5th Cir. 2001). The court must next determine if Plaintiff was prejudiced by the ALJ's failure to explain his conclusions. Shave, 238 F.3d at 596 (The Fifth Circuit "requires, however, a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be

---

[49]    See, e.g., Tr. 118, 132, 133.

[50]    See Tr. 11-18.

[51]    See Tr. 11-18.

13

permitted to serve as the basis for relief from an ALJ's decision.").

Plaintiff argues that "[s]uch massive obesity affects all other impairments."[52]  The court does not, though, find any evidence in the record that Plaintiff's obesity would combine with any of her other alleged impairments to either meet a Listing or qualify as an impairment that would undermine the ALJ's finding that Plaintiff could perform her past relevant work.

While SSR 02-01p specifically mentions the interrelationship between obesity and impairments of the musculoskeletal, cardiovascular, and respiratory systems, the court finds no evidence existing in the record indicating that Plaintiff's impairments were of the type that would be exacerbated by obesity. In fact, Plaintiff's medical records regularly indicated that her respiratory and cardiovascular functions were generally within "normal" ranges.[53]   The court has no reason to presume that Plaintiff's additional alleged impairments of prurigo nodularis or diabetic retinopathy were exacerbated by her obesity.

Furthermore, there is no indication that the ALJ failed to consider Plaintiff's obesity when determining her RFC.  To the contrary, the ALJ included a limitation in Plaintiff's hypothetical

---

[52]     Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p. 5.

[53]     See, e.g., 118, 132, 133, 142, 153, 163, 176, 184, 226.  The court notes that Plaintiff's records periodically report edema and at least once report "joint swelling, muscle cramps, [and] muscle weakness." However, the records also include reports noting that Plaintiff has "no edema" and no joint difficulties.

that she be allowed to elevate her legs and feet.[54]  Defendant also notes that the ALJ's determination that Plaintiff be limited only to sedentary work "could only be attributed to Plaintiff's obesity" considering that among the impairments recognized by the ALJ, only obesity would impose an exertional limitation.[55]

Finally, Plaintiff's attorney was provided an opportunity to question the VE and spent time clarifying the classification of Plaintiff's past relevant work.[56]  The attorney did not introduce the issue of obesity to the VE, nor did any other specific testimony at the hearing indicate that obesity exacerbated Plaintiff's other impairments.[57]

Plaintiff bears the burden of proving that she is disabled within the meaning of the Act, and the record does not reflect that Plaintiff met this burden regarding the combined effects of obesity and other impairments.  <u>Wren</u> at 125.  The record indicates that, though the ALJ failed to adequately explain the conclusion related to obesity, he did consider Plaintiff's obesity and recognized it as an impairment.  The court therefore finds that the legal error committed by the ALJ did not prejudice Plaintiff, and thus, cannot serve as the basis for relief from the decision of the ALJ.

---

[54]     Tr. 556.

[55]     Defendant's Reply to Plaintiff's Cross-Motion for Summary Judgment, Docket No. 19, p.1-2.

[56]     Tr. 557-8.

[57]     <u>See</u> Tr. 540-59.

### B. Prurigo Nodularis

Plaintiff asserts that the ALJ erred by failing to consider Plaintiff's alleged prurigo nodularis, and contends that Plaintiff's skin disorder was "listing-level."[58]  She also asserts that the ALJ committed legal error by adopting an adversarial (versus inquisitorial) role that resulted in the ALJ "wholly fail[ing] to address [an] entire body of evidence."[59]  Finally, she contends that the ALJ erred by not enlisting the aid of a medical expert.[60]

The Eighth Circuit has held that "although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."[61]  Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).  While the United States

---

[58]    Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p.7.

[59]    Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p.9.

[60]    Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p.9.

[61]    Plaintiff cites the district court case Kelly v. Chater to support her proposition that the Fifth Circuit "requires the ALJ to explain his reasons for rejecting evidence favorable to" Plaintiff.  Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p. 8 quoting Kelly v. Chater, 952 F. Supp. 419, 426 (W.D. Tex. 1996).  In context, the court in Kelly is referring to evidence of the opinions of treating physicians, not simply any favorable evidence.  The Fifth Circuit case Falco v. Shalala, which Kelly cites,  specifically rejects adopting the "rule that an ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected."  Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994).  In the case of evidence clearly favoring a claimants *subjective complaints of pain,* though, Falco held that the ALJ must articulate the reasons for rejecting that evidence.  Id. at 163.  This is not an issue in the instant case.

Supreme Court has explained that Social Security proceedings are inquisitorial rather than adversarial, the Court also held that the claimant bears the burden of proving that she is disabled.  Sims v. Apfel, 530 U.S. 103, 110-111 (U.S. 2000);  Bowen v. Yuckert, 482 U.S. 137, 145 (U.S. 1987).  Plaintiff failed to carry that burden in this case.

Neither Plaintiff's medical records nor her treating physicians explicitly identified the prurigo nodularis as rising to the level required by the Listings.  The medical records do not indicate that the lesions interfered with Plaintiff's joints, limited her ability to do fine and gross motor movements, or limited her ability to ambulate.[62]  While one unsigned medical report noted Plaintiff "developed multiple open sores over her entire body," most other evaluations noted Plaintiff denied symptoms of skin rash or skin infection.[63]  Finally, though Plaintiff's medical records from as far back as 1997 indicate complaints of prurigo nodularis, Plaintiff was able to maintain gainful employment from that time through almost the end of 2001.[64]

In light of the above medical evidence and the absence of any evidence that Plaintiff's skin condition had worsened, the court has no reason to believe that Plaintiff's prurigo nodularis constitutes a limitation that affects her ability to work.

---

[62]   See, e.g., Tr. 118, 132, 133, 224, 226, 236, 273, 294.

[63]   Tr. 295.  See, e.g., Tr. 131, 151, 174, 186.

[64]   Tr. 375, 490.

Contrary to Plaintiff's assertion that the ALJ failed to enlist the aid of a ME, the ALJ specifically considered the Physical Residual Functional Capacity Assessment completed by a medical consultant.[65]   The doctor who filed that assessment was instructed to base his "conclusions on all evidence in [Plaintiff's] file (clinical and laboratory findings; symptoms; observations, lay evidence; reports of daily activities; etc.)."[66] Though the ALJ referenced only one assessment, a second doctor under the same instructions testified to similar conclusions.[67] After viewing the entire record, neither medical consultant noted Plaintiff's skin condition as a potential impairment.[68]

For the reasons stated above, the court finds that the ALJ based the decision on substantial evidence and did not commit legal error in his conclusions related to Plaintiff's prurigo nodularis.

**C. Visual Acuity**

Plaintiff last alleges that the ALJ failed to consider all of the pertinent evidence in the record related to Plaintiff's visual ability, wrongfully determined that Plaintiff's assertions were not credible, and also failed to demonstrate that Plaintiff can

---

[65]     Tr. 15.

[66]     Tr. 304, 340.

[67]     Tr. 305, 341.

[68]     See 304-311, 340-347.

18

"sustain any visual work effort."[69]  The court disagrees.

Plaintiff argues that her vision fluctuated, and "over the course of eight months in 2004, showed evidence of significant serial regression."[70]  While both of these assertions may be true, neither points to an error in the ALJ decision.  The decision noted that Plaintiff's vision fluctuated, but most consistently remained in the range of 20/50 to 20/70.[71]  This finding is supported by substantial evidence in the record.  In fact, even during the eight months singled out by Plaintiff, her right eye vision ranged from 20/50 to 20/70 in eleven of the tests and was found to be 20/80 in only one.[72]  The ALJ recognized this evidence, reviewed it in his decision, identified Plaintiff's impaired sight as a limitation, and included that limitation in the hypothetical presented to the VE.[73]  Based on that hypothetical, the VE opined that Plaintiff could perform her past relevant work.[74]

Plaintiff next contends that the ALJ "failed to follow SSR 96-7p" when he determined Plaintiff's allegations to be only partially

---

[69]   Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p.10.

[70]   Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p.10.

[71]   Tr. 16.

[72]   Tr. 426, 428, 429, 430, 447, 450, 451, 452, 453, 454, 455, 456.

[73]   Tr. 16, 556.

[74]   Tr. 556.

credible.[75]  The stated purpose of SSR 96-7p

> is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision.

1996 SSR LEXIS 4 (SSR 1996).

In the decision, the ALJ reviewed the evidence, noted the inconsistencies between Plaintiff's testimony and the medical record, acknowledged conflicts within the record, and concluded that Plaintiff's allegations are "simply not supported by the record."[76]  Based on that explanation, the court finds that the ALJ complied with SSR 96-7p and did not err when evaluating Plaintiff's credibility.

Finally, Plaintiff asserts that she "cannot maintain competitive employment with such variable vision";[77] however, there is no evidence in the record that supports this claim.  The only evidence Plaintiff presents is a notation made in her medical records on March 20, 2000, stating Plaintiff "is [being] questioned at work about frequent medical appointments; [Doctor] agree[s] to

---

[75]    Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p.11.  1996 SSR LEXIS 4 (SSR 1996).

[76]    Tr. 16.

[77]    Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 14, p.10.

keep communication thru [sic] phone and fax."[78]   Not only does this comment fail to convince the court that Plaintiff faced any difficulty at work due to her impairments, but the court also notes that Plaintiff continued working for more than twenty months after this notation appeared in her record.   This history seems to demonstrate that Plaintiff's doctor visits would not preclude her ability to maintain competitive employment.

While the court recognizes the seriousness of Plaintiff's visual impairment, it must review the record to determine only whether the ALJ's decision is supported by more than a mere scintilla of evidence.   See Carey, 230 F.3d at 135.   The court finds more than a scintilla of evidence supports the ALJ's decision, and Plaintiff has not carried her burden of proving that she is disabled.   Therefore, the court cannot find that the ALJ erred when considering Plaintiff's limitations due to visual acuity, or when determining that she could perform work that existed in significant numbers in the national economy.

**D. Defendant's Motion for Summary Judgment**

Defendant asserts in her motion that the ALJ's decision should be affirmed because it properly determined Plaintiff was never under a disability.[79]   Finding no prejudicing legal error in the ALJ's decision, the court should not disturb it if substantial

---

[78]   Tr. 204.

[79]   Defendant's Cross Motion for Summary Judgment, Docket Entry No. 15.

record evidence supports the ALJ's finding that Plaintiff is not disabled.

The court is sympathetic to the difficulties faced by Plaintiff, and acknowledges the seriousness of her medical condition; however, the ALJ is given the task of weighing the evidence and deciding disputes.  See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001);  Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).  Because the court finds more than a scintilla of evidence exists in support of the ALJ's decision, that decision cannot be overturned.

Furthermore, though the court finds the ALJ did commit legal error in evaluating the evidence and in making his determination, it also finds that error did not prejudice Plaintiff.  Therefore, the court finds that Defendant's Cross Motion for Summary Judgment should be granted.

### IV. Conclusion

For all of the foregoing reasons, the court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross Motion for Summary Judgment.

SIGNED at Houston, Texas, this 28th day of April, 2006.

Nancy K. Johnson
United States Magistrate Judge